IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

LeGINA THOMAS,
TODD THOMAS,

    Plaintiffs,

v.                                                                  No. Civ. 12-381-JCH-LAM

Dr. MARY KAVEN, Ph.D.,
JILL STRAIT, and
Dr. ANILLA DEL FABBRO, M.D.,
in their individual capacities,

    Defendants.

### MEMORANDUM OPINION AND ORDER

This matter comes before the Court on the following motions: Defendants Dr. Mary Kaven, Ph.D., Jill Strait, and Dr. Anilla Del Fabbro, M.D.'s, (collectively, "Defendants") Motion to Narrow or Limit Discovery (ECF No. 38); Defendants' Motion for Summary Judgment on Plaintiffs' Familial Association Claim and Memorandum in Support (ECF No. 44); and Plaintiff LeGina and Todd Thomas' (collectively, "Plaintiffs") Motion and Memorandum in Support of Plaintiffs' Affidavit for Discovery Pursuant to Rule 56(d) (ECF No. 48). The Court, having considered the motions, briefs, evidence, and applicable law, concludes that Defendants' motion to narrow or limit discovery should be granted in part and denied in part as described herein; Defendants' motion for summary judgment should be denied without prejudice with leave to re-file or amend upon completion of discovery; and Plaintiffs' motion for additional discovery pursuant to Rule 56(d) should be granted.

**I.       PROCEDURAL HISTORY[1]**

Plaintiffs sued under 42 U.S.C. § 1983, asserting that Defendants violated their Fourteenth Amendment right to direct their child's medical care and the right to familial association. *Thomas*, 765 F.3d at 1190. Defendants filed a motion to dismiss based on absolute and qualified immunity. *Id.* The Court granted the motion to dismiss, holding that Defendants were entitled to qualified immunity and concluding that the complaint did not state a claim for violations of clearly established rights to direct medical care and to familial association. *Id.*

On appeal, the Tenth Circuit affirmed the dismissal of Plaintiffs' right to direct medical care claim, but reversed the dismissal of Plaintiffs' familial association claim, remanding for further proceedings consistent with the opinion. *Id.* at 1198. As for its decision affirming the dismissal of the right to direct medical care, the Tenth Circuit reasoned as follows:

> In this case, the defendants' communications to CYFD[2] resulted in no official action that affected the Thomases' right to direct M.T.'s medical care. We see no interference with M.T.'s medical treatment as a result of this communication, nor can the Thomases point to any case law that defines the contours of the right to direct medical care such that it would be "sufficiently clear" to the defendants that reporting the plaintiffs to CYFD would violate that right. And the Thomases do not allege that any other conduct by the defendants violated their right to direct medical care.
>
>    Because the Thomases have not shown a violation of a clearly established right to direct M.T.'s medical care under these circumstances, the district court was correct to dismiss this claim.

*Id.* at 1195 (internal footnote added).

---

[1] The factual background is set forth in the Tenth Circuit's opinion, *Thomas v. Kaven*, 765 F.3d 1183, 1188-90 (2014).
[2] "CYFD" stands for the New Mexico Children, Youth and Families Department.

With respect to the familial association claim, the Tenth Circuit determined that the "infringement on the Thomases' right to familial association stemmed solely from the emergency medical hold the defendants placed on M.T. prior to the filing of the petition." *Id.* at 1193. Because only the medical hold on M.T., which prevented her discharge, was the cause of her alleged injury, the court limited its assessment of this substantive due process claim to the placement of the medical hold. *Id.* at 1195.

The Tenth Circuit then set forth the elements necessary for Plaintiffs to state a claim for deprivation of the right of familial association: (1) Defendants intended to deprive Plaintiffs of their protected relationship with their daughter; and (2) balancing Plaintiffs' interest in their protected relationship with their daughter against the state's interest in her health and safety, Defendants either unduly burdened Plaintiffs' protected relationship, or effected an unwarranted intrusion into that relationship. *Id.* at 1196. "In conducting this balancing, the court will consider, among other things, the severity of the infringement on the protected relationship, the need for defendants' conduct, and possible alternative courses of action." *Id.*

The Tenth Circuit concluded that the facts of the complaint sufficiently stated a claim for deprivation of the right to familial association, and then turned to Defendants' argument that they are entitled to qualified immunity because Plaintiffs failed to show an immediate threat to M.T.'s life did not exist. The Tenth Circuit's analysis of this argument bears repeating here:

> The scope of the right to familial association, at least in the context of deprivation of parental custody in certain circumstances, is clearly established. But at this stage in the proceedings, we do not have the information necessary to determine whether a state interest in M.T.'s health and welfare existed such that it would have been justified for the defendants to infringe upon the Thomases' right to familial association. Whether the right to familial association has been violated requires the court to conduct a fact-intensive balancing test not ordinarily suitable for the Rule 12(b)(6) stage. When the facts have not yet been fully brought out

3

> through discovery, it is difficult for the court to adequately conduct the relevant constitutional test….
>
> The facts alleged in the Thomases' complaint, when accepted as true and viewed in a light favorable to the plaintiffs, do not show an immediate threat of suicide had M.T. been discharged. The complaint does allege that suicidal ideation was a basis for M.T.'s intake, diagnosis, and course of treatment. But the complaint does not contain facts showing M.T.'s suicide risk on April 29, the day the defendants instituted the medical hold and allegedly violated the plaintiffs' constitutional rights. Although the complaint avers that M.T. expressed suicidal ideation on May 4, the complaint does not provide sufficient information or context for determining the immediacy or seriousness of the suicide threat during the course of the seven-day hold. Moreover, the complaint alleges the defendants chose to discharge M.T. because they determined her insurance would not cover the involuntary commitment, and not because her medical condition improved. Thus, to be able to adequately determine whether officials of reasonable competence could disagree as to the danger of discharging M.T., the court must allow for some factual development of the record. The defendants will be entitled to qualified immunity if reasonable officers could at least disagree as to the danger of discharging M.T.

*Id.* at 1196-97 (internal footnote omitted). As to the factual development necessary, the Tenth Circuit noted that "if the district court determines that it cannot rule on the immunity defense without clarification of the facts, it may issue a discovery order narrowly tailored to uncover only those facts needed to rule on the immunity claim." *Id.* at 1197 n.9 (internal quotations omitted).

After remand, Defendants filed a Motion to Narrow or Limit Discovery (ECF No. 38), arguing that the Tenth Circuit opinion contemplates that this Court must significantly narrow the scope of discovery to the lone remaining issue "regarding whether a reasonably competent official in Dr. Del Fabbro's position could conclude that the placement of the Medical Hold was justified by the existence of an immediate threat to M.T. if she were to be discharged to Plaintiffs." Def.'s Mot. to Narrow 4, ECF No. 38. Defendants argue that discovery should be limited to the placement of the medical hold on M.T. on April 29, 2010, and seek to bar discovery of six enumerated categories of information. *See id.* at 5-6.

On December 2, 2014, Defendants filed a motion for summary judgment on Plaintiffs' familial association claim. Defs.' Mot. for Summ. J., ECF No. 44. As to Defendants Kaven and Straits, Defendants contend that their affidavits establish that the act and decision to place the medical hold was Defendant Del Fabbro's, and thus, they should be dismissed. *Id.* at 3. Regarding Defendant Del Fabbro, Defendants assert she is entitled to qualified immunity because there is no genuine issue of disputed fact that her placing M.T. on a medical hold was objectively reasonable, because reasonable officers in her position could at least disagree that an immediate threat to M.T.'s life existed on April 29, 2010, the date of the medical hold. *Id.*

In response, Plaintiffs filed a motion for discovery under Rule 56(d). Pl.'s Mot. for Rule 56(d) Discovery, ECF No. 48. Plaintiffs seek to take the depositions of Defendants and to obtain communications between Defendants and CYFD regarding their request for the medical hold. *Id.* at 4. Plaintiffs also filed a response objecting to Defendants' motion to narrow discovery, arguing that the limitations did not comport with the Tenth Circuit's opinion. *See* Pls.' Resp. to Defs.' Mot. to Narrow or Limit Discovery 1, ECF No. 49. Defendants agree in part to the discovery sought by Plaintiffs in the Rule 56(d) affidavit. Defs.' Reply 6, ECF No. 52. The Court will now turn to the discovery in contention.

## II.     STANDARD

The qualified immunity defense protects against the burdens of discovery as well as trial. *See Siegert v. Gilley*, 500 U.S. 226, 231-33 (1991).  Where a court has entered a broad discovery stay after a defendant has raised the qualified immunity defense, Federal Rule of Civil Procedure 56(d) provides a mechanism to protect qualified immunity by preventing "broad-reaching" discovery, but permitting limited discovery that may be necessary when the doctrine is asserted

5

in a motion for summary judgment on contested factual assertions. *See Crawford-El v. Britton*, 523 U.S. 574, 600 & n.20 (1998). The generally liberal Rule 56(d) standard is more limited in the context of a summary judgment motion based on qualified immunity because insubstantial lawsuits against government officials should be resolved prior to discovery, if possible. *Lewis v. City of Ft. Collins*, 903 F.2d 752, 758 (10th Cir. 1990) (quoting *Jones v. City and County of Denver*, 854 F.2d 1206, 1211 (10th Cir. 1988)). Discovery thus "must be tailored specifically to the immunity question." *Cole v. Ruidoso Muns. Schs.*, 43 F.3d 1373, 1387 (10th Cir. 1994) (quoting *Workman v. Jordan*, 958 F.2d 332, 336 (10th Cir. 1992)).

Rule 56(d) permits a non-moving party to identify "facts essential to justify its opposition" to a summary judgment motion that the party cannot yet present. Fed. R. Civ. P. 56(d). In order to satisfy requirements of Rule 56(d), Plaintiff's affidavit must do more than simply indicate that he would like to engage in discovery; rather, the Rule 56(d) affidavit must specifically explain (1) what probable facts the plaintiff can find through further discovery, (2) what steps the party has taken to obtain the discovery, (3) how that discovery will assist in overcoming defendant's *prima facie* showing of entitlement to summary judgment, and (4) how additional time will enable the party to rebut the movant's allegations of no genuine issue of material fact. *See Valley Forge Ins. Co. v. Health Care Mgmt. Partners, Ltd.*, 616 F.3d 1086, 1096 (10th Cir. 2010); *Libertarian Party of NM v. Herrera*, 506 F.3d 1303, 1308-09 (10th Cir. 2007) (quoting *Ben Ezra, Weinstein & Co. v. Am. Online, Inc.*, 206 F.3d 980, 987 (10th Cir. 2000)); *Trask v. Franco*, 446 F.3d 1036, 1042 (10th Cir. 2006). *See also Committee for First Amendment v. Campbell*, 962 F.2d 1517, 1523 n.7 (10th Cir. 1992). In addition, where the defendant has raised qualified immunity as a defense, the non-moving party must also show

"'*how* discovery will enable them to rebut a defendant's showing of objective reasonableness' or, stated alternatively, demonstrate 'a connection between the information he would seek in discovery and the validity of the [defendant's] qualified immunity assertion.'" *Lewis*, 903 F.2d at 758 (quoting *Jones*, 854 F.2d at 1211). If a party makes the necessary showing, the Court may defer considering the motion, deny it, allow additional time for "essential" discovery to occur, or issue any other appropriate order. *See* Fed. R. Civ. P. 56(d).

## III. ANALYSIS

### A. Defendants' Motion to Narrow

In their motion, Defendants ask that the discovery occur within 45 days of this Court's order. The Court finds no reason not to grant the 45-day request, but notes that, should Plaintiffs find that the 45-day request is not adequate, they may bring their concerns to the Honorable Lourdes A. Martinez. After all, the delays in discovery in this case to date largely are the result of Defendants' motion practice, not Plaintiffs' actions or inactions in pursuing discovery.

Defendants also seek to bar discovery aimed at the following categories of information as not relevant to the remaining claim and the qualified immunity defense:

1. The report to and investigation conducted by the Lea County Sheriff's Office relating to Plaintiffs' report of the criminal sexual encounter involving M.T., including depositions of the investigating officers;

2. M.T.'s admission and treatment at the Nor-Lea Hospital, including depositions of Nor-Lea Hospital employees;

3. M.T.'s screening and evaluation by CYFD personnel, including depositions of CYFD personnel;

4. Any other events that occurred prior to M.T.'s voluntary admission to UNMCPC;

>   5.   Any reports by Defendants to CYFD regarding concerns of medical neglect by Plaintiffs to M.T.;
>
>   6.   Any information or events that occurred after the decision to place M.T. on the Medical Hold, including the petition for involuntary commitment.

Defs.' Mot. to Narrow or Limit Discovery 5-6, ECF No. 38. Defendants contend that only the depositions of Plaintiffs and Defendants, focused on the decision to place the medical hold on April 29, 2010, are necessary, and written discovery should be similarly limited. *Id.* at 6.

### 1.   Lea County Sheriff's Office ("LCSO") Investigation

Turning to the first category, Plaintiffs seek information on the LCSO investigation. At this time, they only anticipate subpoenaing records related to the investigation. *See* Pl.'s Resp. 14 n.3, ECF No. 49. The request to preclude deposing the LCSO officers is thus moot.

As to the written discovery, Plaintiffs contend the information is relevant to determine whether M.T. was in real danger and whether competent officials agreed she was in danger. The question, however, is whether reasonable officials would disagree as to whether an immediate threat existed to M.T.'s safety based on what Defendants knew at the time they placed the medical hold on her. Consequently, the only reports that are relevant are those that Defendants knew of or upon which they relied. The Court will therefore limit the discovery of the investigation conducted by the LCSO to those reports and information of which Defendants knew or were aware. Defendants' request to limit discovery in category number one is thus granted in part and denied in part.

### 2.   Nor-Lea Hospital medical records

The Court agrees with Plaintiffs that Defendants have not shown that they can restrict Plaintiffs' access to their daughter's medical records from Nor-Lea Hospital. Plaintiffs are also

clearly entitled to all the records that Defendants had or about which they knew. The Court will therefore not bar Plaintiffs from obtaining the medical records. At this time, it does not appear that Plaintiffs are seeking to depose any Nor-Lea Hospital employees. *See* Pl.'s Resp. 15-16, ECF No. 49; Pl.'s Mot. for Rule 56(d) Discovery, ECF No. 48. Should Plaintiffs seek to depose any hospital employees in the future, Plaintiffs will need to file a motion to justify the relevance of the depositions to the qualified immunity question.

### 3.     M.T.'s screening and evaluation by CYFD personnel

Plaintiffs are entitled to any communications and information relayed therein between CYFD and Defendants, because the information is relevant to what Defendants knew and the reasonableness of their decision to place the medical hold. The Court, however, will limit the discovery of CYFD's evaluation to those reports and information of which Defendants knew or were aware. Defendants' request to limit discovery in category number three is thus granted in part and denied in part.

### 4.     Events occurring prior to M.T.'s admission to UNMCPC

Defendants' request to preclude discovery of any events that occurred prior to M.T.'s admission is too far-reaching. The Court will not restrict discovery into those events that occurred prior to M.T.'s admission to the extent Defendants were aware of them. For example, M.T.'s past medical and school history about which Defendants knew are relevant to the reasonableness of their decision to place a medical hold on her. Defendants' request number four is therefore granted in part and denied in part.

### 5.     Reports by Defendants to CYFD concerning medical neglect

The Court will allow discovery on Defendants' reports to CYFD concerning issues of medical neglect, as it is relevant evidence of Defendants' knowledge of M.T.'s medical condition and their reasons for, and the reasonableness of, placing the medical hold on M.T. Consequently, Defendants' request number five is denied.

### 6. Events occurring after decision to place M.T. on medical hold

Defendants' request to exclude from discovery all facts occurring after the decision to place M.T. on the medical hold is also too broad and contrary to the Tenth Circuit's directive on remand. The Tenth Circuit held that dismissal was inappropriate because there were insufficient facts or "context for determining the immediacy or seriousness of the suicide threat during the course of the seven-day hold." *Id.* at 1197. The Tenth Circuit particularly noted the significance of the allegations that Defendants chose to discharge M.T. because her insurance would not cover the involuntary commitment, not because her medical condition improved, in determining whether officials of reasonable competence could disagree regarding the danger of discharging M.T. *Id.* Information regarding Defendants' decision to file the petition for involuntary commitment, filed one day before M.T.'s insurance ran out and one day before their insistence that Plaintiffs take her home, is relevant to the sincerity of Defendants' interest in holding her. The insurance issue informs the state interest factor in the requisite analysis. Consequently, factual development regarding these events, which occurred after the decision to place the medical hold on M.T., is required. The Court will therefore deny Defendants' overreaching request number six.

### B.    Plaintiffs' Motion for Rule 56(d) Discovery

### 1.    Depositions of Defendants

Defendants acknowledge that Plaintiffs are entitled to depose Dr. Del Fabbro and "to depose Defendants Dr. Kaven and Ms. Straits regarding the statements made in their affidavits supporting Defendants' Motion for Summary Judgment." Defs.' Reply 5, ECF No. 52. Defendants argue that the inquiries at the depositions should be restricted to their involvement in placing M.T. on the medical hold. *Id.*

Plaintiffs have set forth in their Rule 56(d) motion the following topics of information they seek to explore in the depositions of Defendants:

> (1) the specific symptoms observed by each of the defendants demonstrating that M.T. posed a significant danger to herself;
>
> (2) the Defendants' knowledge of M.T.'s medical history;
>
> (3) all evidence possessed by each of the defendants that indicated to them M.T. was mentally retarded (even when presented with evidence that M.T. was a gifted student);
>
> (4) all grounds supporting the claim that M.T. was suffering from a major depressive disorder, borderline personality disorder, and early onset schizophrenia;
>
> (5) the actions taken by each of the Defendants in filing a medical hold on M.T.;
>
> (6) the Defendants' complete factual basis for suddenly discharging M.T. on May 5, 2010; and
>
> (7) the Defendants' understanding of the Thomases' health insurance benefits and the role that played in their decision making.

Pl.'s Rule 56(d) Mot. 11-12, ECF No. 48.

Defendants only object to categories (3) and (4), arguing that the validity of those diagnoses are not relevant to whether M.T. was likely to harm herself on April 29, 2010. Contrary to Defendants' argument, information concerning M.T.'s cognitive ability and mental state, what Defendants knew about her mental state, and what were Defendants' diagnoses or

misdiagnoses are relevant to the reasonableness of their decision to place the medical hold. This information provides "context for determining the immediacy or seriousness of the suicide threat" as well as whether reasonably competent officials could disagree regarding the danger of discharging her based on a review of medical records. The Court thus finds that all seven grounds of inquiry are relevant and narrowly tailored to the qualified immunity analysis as to the reasonableness of placing the medical hold on M.T. The Court will therefore grant Plaintiff's request to take the depositions of all three Defendants regarding these areas of inquiry.

### 2. Written discovery regarding communications with CYFD

Plaintiffs also request written discovery "requiring the Defendants to (1) identify any persons with whom they discussed M.T.'s case, including any CYFD employees and (2) to produce any communications between the Defendants and CYFD." Pl.'s Mot. for Rule 56(d) Discovery 13-14, ECF No. 48. Contrary to Defendants' argument, this information is relevant to Defendants' knowledge of M.T.'s condition and their intent in placing the medical hold on M.T. The Court will therefore allow Plaintiffs to propound this written discovery, and will grant Plaintiffs' motion for Rule 56(d) discovery in its entirety.[3]

### C. Defendants' Motion for Summary Judgment

Defendants argue that they are entitled to summary judgment. The Tenth Circuit specifically concluded that "the complaint sufficiently alleges that all defendants were involved in the decision to retain custody of M.T. at this time." *Thomas*, 765 F.3d at 1196. Defendants acknowledge that Plaintiffs are entitled to depose all three Defendants. Plaintiffs have averred

---

[3] The Court finds it unnecessary to address Defendants' procedural argument that Plaintiff should have filed a response with a Rule 56(d) affidavit, rather than a separate motion, to request the discovery they seek. Regardless of the avenue taken, Plaintiffs are entitled to the relief.

that the information they seek will show the respective roles each of the Defendants had in placing or in causing to place the hold on M.T. *See* Pls.' Decl. of Matthew L. Garcia ¶ 7, ECF No. 48-1. Plaintiffs have met their Rule 56(d) burden, and thus, granting summary judgment at this time would be inappropriate and premature. Accordingly, the Court will deny the motion for summary judgment at this time with leave to re-file the motion or to file an amended motion in light of the facts discovered after the completion of discovery. *See* Fed. R. Civ. P. 56(d)(1).

**IT IS THEREFORE ORDERED** that

1. Defendants' Motion to Narrow or Limit Discovery **(ECF No. 38)** is **GRANTED in part and DENIED in part** as described herein.

2. Defendants' Motion for Summary Judgment on Plaintiffs' Familial Association Claim and Memorandum in Support (**ECF No. 44**) is **DENIED without prejudice**.

3. Plaintiffs' Motion and Memorandum in Support of Plaintiffs' Affidavit for Discovery Pursuant to Rule 56(d) (**ECF No. 48**) is **GRANTED**.

_____
UNITED STATES DISTRICT JUDGE