IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

LEGINA and TODD THOMAS,

    Plaintiffs,

v.                                              No. CIV-12-0381 JCH/LAM

DR. MARY KAVEN, Ph.D.,
JILL STRAIT, and
DR. ANILLA DEL FABRO, M.D.,
in their individual capacities,

    Defendants.

## ORDER DENYING PLAINTIFFS' MOTION TO COMPEL [*Doc. 93*]

**THIS MATTER** is before the Court on *Plaintiffs' Opposed Motion to Compel Defendants to Comply With the Court's Orders and to Produce Withheld Documents and for Sanctions (Doc. 93)*, filed April 19, 2016. Defendants filed a response to the motion on May 3, 2016 [*Doc. 94*], and Plaintiffs filed a reply on May 20, 2016 [*Doc. 97*]. On May 27, 2016, pursuant to the Court's order [*Doc. 99*], Defendants submitted the two Patient Safety Net Reports to the undersigned for an *in camera* review  Having considered the motion, response, reply, the record of the case, and relevant law, the Court **FINDS** that the motion is not well-taken and shall be **DENIED**.

### Background

On March 31, 2016, the Court entered an order [*Doc. 89*] granting in part and denying in part Plaintiffs' motion to compel [*Doc. 73*]. Specifically, the Court ordered the following:

    (1) **Within five (5) days of the entry of this Order**, the records custodian for UNMH shall provide a written statement to

both parties, answering under oath either "Yes" or "No" to the following questions:

(a) "Has UNMH (which includes UNM CPC)[1] withheld any documents from Plaintiffs' daughter's medical or psychiatric files?"; **and**

(b) "Has UNMH (which includes UNM CPC) withheld any records regarding communications between UNMH staff and CYFD and/or Nor Lea Hospital which discuss, reference, or pertain to the care and/or treatment of Plaintiffs' daughter?";

(2) **If the answers to (1)(a) AND (1)(b) are "No,"** then Plaintiffs shall file their response to Defendants' motion for summary judgment [*Doc. 77*] no later than **fourteen (14) days after receipt of UNMH's response**;

(3) **If the answers to (1)(a) AND/OR (1)(b) are "Yes,"** then, **within ten (10) days of receipt of UNMH's response**, Defendants shall:

(a) Produce to Plaintiffs any of these withheld documents Defendants knew about or relied upon in making their decisions to place the medical hold on Plaintiffs' daughter, file the petition for involuntary commitment, or release Plaintiffs' daughter to her parents; and

(b) Provide Plaintiffs with a log of any of these withheld documents which Defendants state they did not either know about or rely upon in making their decisions to place the medical hold on Plaintiffs' daughter, file the petition for involuntary commitment, or release Plaintiffs' daughter to her parents. *This log must describe the withheld documents and the reasons why they were withheld with enough specificity for Plaintiffs to be able to determine whether they wish to seek further relief from the Court with regard to these documents*;

(4) **Within fourteen (14) days of receipt of the withheld documents and Defendants' log**, Plaintiffs shall either:

(a) file a motion seeking further relief from the Court *based only on the documents UNMH has withheld and which Defendants state they did not know about or rely upon*; or

---

[1] UNMH is the "University of New Mexico Hospital" and CPC is the "Children's Psychiatric Center." *See* [*Doc. 89* at 3-4].

2

>> (b) file their response to Defendants' motion for summary judgment [*Doc. 77*].

[*Doc. 89* at 8-9].

On April 5, 2016, Defendants filed an affidavit from Defendant Kaven, stating that she "serve[s] as a medical records custodian for certain psychological test data records ('raw data') for [her] patients at UNM Children's Psychiatric Hospital" and that she has turned over this raw data to a licensed New Mexico psychologist designated by Plaintiffs. [*Doc. 90* at 1]. Defendant Kaven further states in her affidavit: "No, I have not withheld any documents from [Plaintiffs' daughter's] medical file (which includes psychiatric files). No, I have not withheld any records in the electronic medical records regarding communications between UNMH staff and CYFD and/or Nor Lea Hospital which discuss, reference, or pertain to the care and/or treatment of Plaintiffs' daughter." *Id.* at 1-2. The same day, Defendants filed an affidavit from Michelle Martinez, stating that she "serve[s] as a medical records custodian for UNMH" and stating: "No, I have not withheld any documents from [Plaintiffs' daughter's] electronic medical chart (which includes psychiatric files). No, I have not withheld any records in the electronic medical records regarding communications between UNMH staff and CYFD and/or Nor Lea Hospital which discuss, reference, or pertain to the care and/or treatment of Plaintiffs' daughter." [*Doc. 91*].

Also on April 5, 2016, Defendants filed a privilege log, listing two documents, each titled "Patient Safety Net Report" (hereinafter "PSN reports"), and dated May 1, 2010, and May 6, 2010, respectively. [*Doc. 92*]. Defendants state that these two documents are privileged pursuant to the federal Patient Safety and Quality Improvement Act of 2005, 42 U.S.C. §§ 2299b-22(a)(1)(2)(4), *et seq.*, Review Organization Immunity Act, N.M.S.A. 1978 §§ 41-9-1 to 41-9-7, and the self-critical analysis privilege, citing *Weekoty v. United States*,

3

30 F.Supp.2d 1343 (D.N.M. 1998). *Id.* at 1.  Defendants further state that neither report existed on April 29, 2010, when the medical hold was placed, that neither report was considered by Defendant Del Fabbro, M.D. when she placed MT on a medical hold on April 29, 2010, and that the documents are not maintained as part of the medical file of Plaintiffs' daughter and that UNMH was statutorily mandated to keep the reports separate from her medical file.  *Id.* at 2.

## Motion

Plaintiffs contend that the affidavits [*Docs. 90* and *91*] do not conform to the Court's Order [*Doc. 89*] because the records custodians swore only that they had provided all *electronic* records, though the Court did not so limit its order.  [*Doc. 93* at 3-4].  Plaintiffs also contend that Defendants had previously stated that Defendant Kaven was *not* a records custodian for UNMCPC, though she swore in her affidavit [*Doc. 90*] that she is.  *Id.* at 4.  Plaintiffs further contend that Defendants failed to comply with the Court's Order [*Doc. 89*] because they did not state whether they had relied upon the documents to file the involuntary petition or to release Plaintiffs' daughter.  *Id.* at 6.  As relief, Plaintiffs ask the Court to sanction Defendants for their failures to comply with the Court's Order (*id.* at 7-8), and to "again order UNMH, including UNMCPC to swear under oath whether they have withheld any documents (not just electronic documents) from Plaintiffs' daughter's medical or psychiatric files or any records (not just electronic records) regarding communications between UNMH staff and CYFD and/or Nor Lea Hospital which discuss, reference, or pertain to the care and/or treatment of Plaintiffs' daughter" (*id.* at 8).  Plaintiffs ask Defendants to clarify whether or not Dr. Kaven serves as a records custodian and, if so, for which documents she serves as records custodian, and to state under oath whether Defendants relied on the withheld documents in filing the involuntary commitment and in discharging Plaintiffs' daughter.  *Id.*  In addition, Plaintiffs contend that Defendants' asserted

4

privilege as to the withheld documents fails because Defendants failed to claim this privilege earlier, and because Defendants have failed to provide enough information to determine whether the documents are privileged for the reasons asserted by Defendants. *Id.* at 8-16. Therefore, Plaintiffs ask the Court to order Defendants to produce the documents identified in their privilege log and to allow Plaintiffs to decide whether they deem it necessary to reopen the depositions of Defendants for questions related to these documents. *Id.* at 16.

In response to the motion, Defendants contend that the reports are not responsive to any of Plaintiffs' discovery requests because they are not part of Plaintiffs' daughter's medical file or chart, so they were not improperly withheld. [*Doc. 94* at 2 and 5-6]. Defendants further contend that the reports are not subject to the Court's Order [*Doc. 89*] because they were not relied on by Defendants, and that, even if the documents are subject to the Court's Order, Defendants properly withheld them on the basis of privilege. *See* [*Doc. 94* at 2 and 7-9]. Defendants ask the Court to deny Plaintiffs' motion because Plaintiffs failed to act in good faith to resolve the dispute prior to filing their motion. *Id.* at 2 and 9-11. Defendants explain that they "offered to submit the PSN reports for *in camera* review to assuage any doubts concerning the documents' relevancy, i.e. that the two PSN reports were not in any way relied upon in placing the hold or releasing [Plaintiffs' daughter] to her parents," but Plaintiffs rejected that offer. *Id.* at 2-3. Defendants contend that Plaintiffs filed their motion to delay responding to Defendants' motion for summary judgment, and that Plaintiffs' allegation that Defendant Kaven misrepresented her status is immaterial and incorrect. *Id.* at 11-12. Defendants attach supplemental affidavits explaining that no documents, electronic or otherwise, have been withheld, and explaining that Defendants did not author, read, or rely upon either report. *See* [*Docs. 94-2, 94-3, 94-4, 94-5*

and *94-6*]. Defendants also filed an amended privilege log including the report numbers, authors of the reports, and additional information about the reports. [*Doc. 95*].

In reply, Plaintiffs restate their grounds for seeking sanctions from Defendants. [*Doc. 97* at 2-3]. Plaintiffs contend that Defendants' supplemental affidavits do not clarify that all records, not just electronic records, have been produced (*id.* at 4), and that the affidavits do not clarify whether Defendants knew about the reports because they only state that Defendants did not rely on or read the reports (*id.* at 5). Plaintiffs further contend that Defendants have made conflicting statements regarding whether Defendant Kaven is a records custodian (*id.* at 6-7), and restate their contentions that the reports are not privileged (*id.* at 7-12).

## Analysis

### A. Good Faith Conference With Defendants

First, the Court considers Defendants' contention that Plaintiffs failed to adequately confer with Defendants prior to filing the motion. *See* [*Doc. 94* at 9-11]; *see also* Fed. R. Civ. P. 37(a)(1) (explaining that a motion to compel "must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make the disclosure or discovery in an effort to obtain it without court action"). At 12:09 p.m. on April 19, 2016, Plaintiffs e-mailed Defendants a copy of the motion, seeking Defendants' position on the motion, and stating that they intended to file it that afternoon. *See* [*Doc. 94-1* at 3]. At 4:59 p.m. on the same day, Defendants responded stating:

> The defendants [sic] position on you [sic] motion is that this motion is interposed for delay; that the PSN reports did not exist on 4/29/10, those two reports are not part of MT's electronic medical file as required by statute and they had [sic] do not involve communications to Nor Lea hospital or CYFD such that submitting the two reports in camera will resolve the issue. Please include in your motion as defendants [sic] position.

6

*Id.* at 1.  The Court agrees with Defendants that Plaintiffs did not give Defendants adequate opportunity to consider the motion by e-mailing a copy of the motion the same day they planned to file it.  At the same time, the Court notes the tortuous history of Plaintiffs' attempts to determine whether Defendants have withheld relevant documents from Plaintiffs' medical file, chronicled in the Court's Order [*Doc. 89* at 3-6].  Moreover, as the Court will more fully discuss below, Defendants failed to comply with the Court's Order [*Doc. 89*] by altering the language in the affidavits to pertain only to electronic records (rather than all records) and by unnecessarily filing a privilege log even though Defendants maintained that no records were withheld.  For these reasons, the Court is not surprised that Plaintiffs refused to informally resolve this issue as proposed by Defendants.  The Court, therefore, finds that under these circumstances, Plaintiffs did not violate the requirement under Rule 37 to confer in good faith prior to filing a motion to compel.  However, the Court cautions counsel for Plaintiffs that a cursory e-mail sent at the last minute will not constitute compliance with the rule in the future.

### *B.  Defendant Kaven's Status as Records Custodian*

Next, the Court considers Plaintiffs' contention that Defendant Kaven contradicted herself in sworn statements regarding whether she is a records custodian for UNMH.  [*Doc. 93* at 4].  Defendant Kaven stated in her affidavit that she "serve[s] as a medical records custodian for certain psychological test data records ('raw data') for [her] patients at UNM Children's Psychiatric Hospital" and that she has turned over this raw data to a licensed New Mexico psychologist designated by Plaintiffs.  [*Doc. 90* at 1].  Plaintiffs contend that this statement contradicts Defendant Kaven's previous sworn statement that she is not a records custodian for UNMCPC.  *See* [*Doc. 93* at 4] and [*Doc. 93-2* at 3].  The Court disagrees.  Defendant Kaven clearly stated in her previous sworn answers to interrogatories that, while she is not a records

custodian for UNMCPC, "[a]s the treating psychologist, [she] did retain the raw test data." [*Doc. 93-2* at 3]. This does not in any way contradict Defendant Kaven's statement in her later affidavit that she is a medical records custodian for certain psychological test data records, or raw data, for her patients at UNMCPC. *See* [*Doc. 90* at 1]. Nor does it contradict Defendants' counsel's statement that the defendants are not custodians of record for UNMCPC. *See* [*Doc. 93-1* at 1]. The Court, therefore, rejects this argument.

### *C. Defendants' Compliance With the Court's Order [***Doc. 89***]*

Pursuant to the Court's Order [*Doc. 89*], UNMH was to first answer whether UNMH and UNM CPC have withheld any documents from Plaintiffs' daughter's medical or psychiatric files, and whether these entities have withheld any records regarding communications between UNMH staff and CYFD and/or Nor Lea Hospital which discuss, reference, or pertain to the care and/or treatment of Plaintiffs' daughter. *See* [*Doc. 89* at 8 ¶¶(1)(a) and (b)]. If the answers to either of those questions were "Yes," then the Court's Order required Defendants to produce any of these withheld documents that "Defendants knew about or relied upon in making their decisions to place the medical hold on Plaintiffs' daughter, file the petition for involuntary commitment, or release Plaintiffs' daughter to her parents." *Id.* at 8 ¶(3)(a). In addition, if the answers to either ¶¶(1)(a) or (b) were "Yes," Defendants were to produce a log of any of these withheld documents "which Defendants state they did not either know about or rely upon in making their decisions to place the medical hold on Plaintiffs' daughter, file the petition for involuntary commitment, or release Plaintiffs' daughter to her parents." *Id.* at 8 ¶(3)(b) (emphasis added).[2]

---

[2] Defendants stated in an e-mail to Plaintiffs that they believed that the Court erred by stating that Defendants were to both produce any withheld documents which they knew about or relied upon **and** to produce a log of any withheld documents Defendants did not know about or rely upon. *See* [*Doc. 97-1* at 3] (e-mail from Defendants' counsel to Plaintiffs' counsel opining that the Court intended to use the word "or" in the Order, instead of "and"); *see also* [*Doc. 89* at 8 ¶(3)(a) and (b)]. Defendants stated in this e-mail that they were going to ask the Court to clarify its Order, but they did not do so. *See id.* The Court nevertheless takes this opportunity to explain

This log was to describe the withheld documents and the reasons why they were withheld with enough specificity for Plaintiffs to be able to determine whether they wished to seek further relief from the Court with regard to these documents. *Id.* The purpose behind the Court's Order was to ensure that Defendants had produced ***all*** documents from UNMH and UNMCPC which Defendants knew about or relied upon in making their decisions to place the medical hold, file the petition for involuntary commitment, or release Plaintiffs' daughter, and to notify Plaintiffs of any other documents that were being withheld by UNMH that Defendants did not know about or rely upon at the time they made these decisions regarding Plaintiffs' daughter. *See* [*Doc. 89* at 7] (explaining that the presiding judge in *Document 64* had ordered production of information, records, and communications of which Defendants knew or relied upon in making their decision to place the medical hold, file the petition for involuntary commitment, or release Plaintiffs' daughter to her parents).

Unfortunately, despite the Court's step-by-step instructions to UNMH and Defendants, Defendants failed to comply with the Court's Order [*Doc. 89*].[3] First, UNMH failed to comply with ¶¶(1)(a) and (b) of the Order because the affidavits they filed state that the affiants had not withheld *electronic* medical records, when the Court's Order made no such limitation to what type of records Defendants were to produce. *See* [*Docs. 90* and *91*] (affidavits of Dr. Kaven and

---

that it used the word "and" between ¶¶(3)(a) and (b) because the Court anticipated that UNMH might have withheld documents that Defendants had known about or relied upon, in which case those documents were to be produced to Plaintiffs, **and** the Court also anticipated that UNMH might have withheld documents that Defendants had ***not*** known about or relied upon at the relevant time period, in which case UNMH was not required to produce such documents, but it was required to log them so that Plaintiffs could determine whether they still believed these documents should be produced. Therefore, the Court purposefully used "and" in its Order. The Court acknowledges that, in hindsight, it appears that the Order would have been clearer if the Court had stated "and/or" between ¶¶3(a) and (b) to clarify that Defendants would not need to file a privilege log if the only documents being withheld were not known about or relied upon by Defendants when they made their decisions regarding Plaintiffs' daughter.

[3] Because the Court finds that Defendants failed to comply with the Court's Order [*Doc. 89*], the Court rejects Defendants' contention that Plaintiffs' motion to compel was filed for purposes of delay (*see Doc. 94* at 11-12).

Michelle Martinez). The addition of this word to the affidavits could imply that UNMH has withheld non-electronic records and renders Defendants' answers to the Court's questions ambiguous and susceptible to multiple meanings.

Second, despite UNMH having answered "No" to each of the questions in ¶¶(1)(a) and (b), Defendants proceeded to file a Privilege Log, stating that two PSN reports, dated May 1, 2010 and May 6, 2010, respectively, were being withheld on the basis of the Review Organization Immunity Act and the self-critical analysis privilege, and stating that neither of the reports existed on April 29, 2010, when the medical hold was placed, that neither report was considered by Defendant Del Fabbro, M.D., when she placed MT on a medical hold on April 29, 2010, that the documents are not maintained as part of the medical file of Plaintiffs' daughter, and that UNMH was statutorily mandated to keep the reports separate from her medical file. [*Doc. 92* at 2]. Since the reports were not created until ***after*** the medical hold was placed (which was April 29, 2010, *see Doc. 93* at 5 and *Doc. 94* at 3), the Court finds that Defendants could not have known about or relied upon either report for this decision. As for the decisions to file the petition for involuntary petition on May 4, 2010 (*see Doc. 93* at 5), and the decision to release Plaintiffs' daughter on May 6, 2010 (*id.* at 5-6), it is possible that Defendants knew about and/or relied on the reports for those decisions. Therefore, even though Defendants did not need to produce the Privilege Log since UNMH had already answered "No" to the questions in ¶(1)(a) and (b), Defendants' statements in the Privilege Log led to Plaintiffs reasonably questioning whether Defendants knew of or relied on the PSN reports when the petition was filed or when Plaintiffs' daughter was released.

Despite the Court's finding that Defendants did not comply with the Court's Order [*Doc. 89*], the Court must next consider whether Defendants' supplemental affidavits and

10

amended privilege log adequately addresses these failures.  Defendants' supplement affidavits state that none of the Defendants withheld any records, electronic or otherwise, and that none of the Defendants authored, read, or relied upon either PSN report in making their decisions to place the medical hold, file the petition for involuntary commitment, or release Plaintiffs' daughter.  *See* [*Doc. 94-2*] (affidavit of Defendant Kaven); [*Doc. 94-3*] (affidavit of Defendant Straits); and [*Doc. 94-4*] (affidavit of Defendant Del Fabbro).  The supplemental affidavit from Michelle Martinez, custodian of electronic medical records for all patients at UNMH and CPC, states that UNMH/CPC did not withhold any of Plaintiffs' daughter's electronic medical records (*Doc. 94-5*), and the supplemental affidavit from Lori J. Ponge, Executive Director for CPC, states that she "had a search performed for any non-electronic records regarding [Plaintiffs' daughter]" and that her "search found that there were no records regarding [Plaintiffs' daughter] held by UNM CPC" (*Doc. 94-6*).  Defendants' amended privilege log also states that "neither report was relied upon by any defendant for any purpose between April 29, 2010 and May 6, 2010." [*Doc. 95* at 2].

The Court finds that, when it considers Defendants' original affidavits [*Docs. 90* at *91*] along with their supplemental affidavits [*Docs. 94-2, 94-3, 94-4, 94-5,* and *94-6*], Defendants have now adequately answered "No" to the questions in *Doc. 89,* at 8, ¶¶(1)(a) and (b).  However, with regard to the PSN reports, the Court finds that Defendants have again failed to clearly state whether they ***knew about*** the reports when they made their decisions to file the petition for involuntary commitment and to release Plaintiffs' daughter.[4]  The affidavits and privilege log, instead, only affirm that Defendants did not author, read, or rely upon the reports, which is not the same thing as saying that Defendants did not know about them.  For this reason,

---

[4] The Court found *supra* that Defendants could not have known about either report when the decision was made to place a medical hold on Plaintiffs' daughter because each of the reports was created after that date.

11

the Court ordered Defendants to submit the reports to the Court for an *in camera* review. *See* [*Doc. 99*]. Upon review of the reports, the Court finds that the report dated May 1, 2010 is wholly unrelated to the remaining issues in this case. *See* [*Doc. 64* at 3] (explaining that the Tenth Circuit determined that Plaintiffs' remaining claim "stemmed solely from the emergency medical hold defendants placed on [Plaintiffs' daughter] prior to the filing of the petition" for involuntary commitment, quoting the Tenth Circuit's decision, *Thomas v. Kaven*, 765 F.3d 1183, 1193 (10th Cir. 2014)). The Court further finds that Defendants could not have known about the May 6, 2010 report at the time of either filing the petition or deciding to release Plaintiffs' daughter because the report was made after those events had taken place.[5] For these reasons, along with Defendants' sworn statements that they did not author, read or rely upon the reports, the Court finds that the PSN reports are not responsive to the Court's Order [*Doc. 89*]. The Court need not determine whether or not the reports are privileged because, even if they are not privileged, the Court will not order that they be produced to Plaintiffs because they are not relevant to the remaining issue in this case. The Court, therefore, will deny Plaintiffs' motion.

### D. Sanctions

Federal Rule of Civil Procedure 37(b)(2)(C) provides that, if a party fails to obey a Court order, "the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." The Court notes that the time and effort spent trying to resolve Plaintiffs' motion could have been avoided if Defendants had simply used the precise language the Court provided them in its Order [*Doc. 89*]. By altering that language, Defendants created doubt and confusion for Plaintiffs

---

[5] While this report is dated the same day that Plaintiffs' daughter was released, the content of the report confirms that the report was created *after* Plaintiffs' daughter was released, so Defendants could not have known about it or relied upon it when the decision to release her was made.

which led to their motion.  However, the Court finds that Plaintiffs' failure to make an effort to resolve the issue prior to filing their motion, along with Defendants' apparent confusion over the intent of the Court's Order, renders an award of expenses unjust, so the Court will not order sanctions against Defendants.  The Court encourages counsel for Defendants to take more care when drafting affidavits in the future to avoid the issues that arose in this case.  In addition, the Court cautions counsel for both parties that communicating via e-mail is often inefficient and can result in needless motion practice.  The Court, therefore, directs counsel to discuss issues such as the ones that led to the filing of Plaintiffs' motions to compel via telephone or in person.

**IT IS THEREFORE ORDERED**, for the reasons stated above, that *Plaintiffs' Opposed Motion to Compel Defendants to Comply With the Court's Orders and to Produce Withheld Documents and for Sanctions (Doc. 93)* is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiffs' response to Defendants' motion for summary judgment [*Doc. 77*] is due no later than **fourteen (14) days from the entry of this Order**.

**IT IS SO ORDERED.**

*Lourdes A. Martínez*
**LOURDES A. MARTÍNEZ**
**UNITED STATES MAGISTRATE JUDGE**