IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

LeGINA THOMAS,
TODD THOMAS,

    Plaintiffs,

v.                                                  No. Civ. 12-381-JCH-LAM

Dr. MARY KAVEN, Ph.D.,
JILL STRAITS, and
Dr. ANILLA DEL FABBRO, M.D.,
in their individual capacities,

    Defendants.

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Defendant Dr. Anilla Del Fabbro's Rule 59(e) Motion to Amend Judgment (ECF No. 107). On December 13, 2016, this Court entered a Memorandum Opinion and Order granting summary judgment to Defendants Dr. Mary Kaven and Jill Straits for lack of personal participation in the alleged constitutional violation, but denying summary judgment and qualified immunity to Dr. Del Fabbro. *See* Mem. Op. and Order 26-27, ECF No. 106. Defendant Del Fabbro ("Defendant") asks the Court to reconsider its decision denying her summary judgment and enter a new order granting her qualified immunity. Defendant also filed a Notice under Rule 7.8 of supplemental authorities, informing the Court of the Supreme Court's decision in *White v. Pauly*, 137 S.Ct. 548 (2017). The Court, having considered the motion, the entirety of the record, and the applicable law, particularly *White v. Pauly*, concludes that it erred in denying Dr. Del Fabbro qualified immunity because the law was

not clearly established at the time that placing a medical hold on MT under the circumstances Defendant confronted violated Plaintiffs' right to familial association. The Court will therefore grant the motion to reconsider and dismiss Dr. Del Fabbro from the case.

## I.    FACTUAL BACKGROUND

The Court extensively reviewed the record in its Memorandum Opinion and Order and incorporates those facts herein. *See* Mem. Op. and Order 1-14, ECF No. 106.

## II.   STANDARD

Defendant brings this motion under Federal Rule of Civil Procedure 59(e): "A motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment." Although the Court has yet to enter judgment for or against Defendant Del Fabbro, every order short of a final judgment is subject to reopening at the discretion of the district judge. *Price v. Philpot*, 420 F.3d 1158, 1167 n.9 (10th Cir. 2005) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 12 (1983), and citing Fed. R. Civ. P. 54(b)). "Grounds warranting a motion to reconsider include (1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice." *Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000). A motion to reconsider is not appropriate to get a second bite of the apple using the same arguments that were raised or could have been raised in prior briefing; however, it is proper "where the court has misapprehended the facts, a party's position, or the controlling law." *Id.*

As for the relevant controlling law, qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Anderson v. Creighton*, 483 U.S. 635, 638 (1987) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). The purpose is to protect against

officials being unduly inhibited in the discharge of their duties by the fear of personal monetary liability and litigation. *Id.* "Officials who are mistaken about the lawfulness of their conduct may still be entitled to qualified immunity if the mistake is reasonable in light of the applicable law and the facts known to them at the time." *Gomes v. Wood*, 451 F.3d 1122, 1136 (10th Cir. 2006). If officials of reasonable competence could disagree about the lawfulness of the challenged conduct, then the defendant is entitled to qualified immunity. *Id.* (quoting *Malley*, 475 U.S. at 341). The question is whether a reasonable official in Defendant's circumstances could have believed her conduct to be lawful in light of the clearly established law and the information the officials possessed. *Id.* (quoting *Anderson*, 483 U.S. at 641). Although a plaintiff can overcome the defense without a favorable case directly on point, existing precedent must have placed the constitutional question "beyond debate." *Aldaba v. Pickens*, 844 F.3d 870, 877 (10th Cir. 2016) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011)). Defendant is entitled to qualified immunity "if reasonable officers could at least disagree as to the danger of discharging M.T." *Thomas v. Kaven*, 765 F.3d 1183, 1197 (10th Cir. 2014).

### III. ANALYSIS

Defendant contends that the Court erred by misapplying the law and relying on cases that were at too high a level of generality. Defendant also argues that the Court erred by disregarding the critical, undisputed fact of MT's suicidal statements the day before the hold, by relying on certain other facts in the record that were not material to the qualified immunity defense, and by using a subjective, rather than objective, test. Defendant asserts that application of the law as set forth in *White v. Pauly* compels the conclusion that she is entitled to qualified immunity. Plaintiff disagrees, arguing that the Court applied the proper objective standard and merely held there was

sufficient evidence to create a jury question as to whether a reasonable medical official would have placed a medical hold under the circumstances.

In *White v. Pauly*, the Supreme Court considered the Tenth Circuit's denial of qualified immunity to "an officer who—having arrived late to an ongoing police action and having witnessed shots being fired by one of several individuals in a house surrounded by other officers—shoots and kills an armed occupant of the house without first giving a warning." *White*, 137 S.Ct. at 549. The Tenth Circuit, in affirming the denial of qualified immunity, relied on general statements in the case law that (1) the reasonableness of the use of force depends partially on the level of danger at the precise moment the officer used force; and (2) if a suspect threatens an officer with a weapon, the officer may use deadly force to prevent escape, and where feasible, after some warning has been given. *Id.* at 551. The Supreme Court reversed: "The panel majority misunderstood the 'clearly established' analysis: It failed to identify a case where an officer acting under similar circumstances as Officer White was held to have violated the Fourth Amendment." *Id.* at 552. It clarified once more that "clearly established law" must not be defined "at a high level of generality." *Id.* (quoting *Al-Kidd*, 563 U.S. at 742). Instead, the unlawfulness must be apparent and pre-existing law must have placed the constitutional question beyond debate. *Id.* at 551.

In its initial opinion, the Court concluded that factual questions existed as to whether Dr. Del Fabbro violated Plaintiffs' liberty interest in familial association. *See* Mem. Op. and Order 17-22, ECF No. 106. The Court also determined that questions of fact concerning the immediacy of the need for the medical hold precluded granting qualified immunity to Dr. Del Fabbro, relying on case law establishing that a state official may not infringe on a parent's right to the care and custody of her child without an immediate health or safety risk to that child. *See id.* at

4

22. The Court relied on evidence that, construed in Plaintiffs' favor, suggested that MT's medical condition did not improve between April 29, 2010, and May 6, 2010, yet Dr. Del Fabbro authorized MT's release on the latter date after the hospital received notice that Plaintiff's insurer would no longer cover MT's stay. *See id.* at 22-23. The Court stated that Plaintiffs' evidence cast doubt on the sincerity and reasonableness of Dr. Del Fabbro's belief. *See id.*

The qualified immunity test, however, asks whether the right was sufficiently clear to a reasonable official. *Thomas*, 765 F.3d at 1194. The sincerity of Dr. Del Fabbro's belief is not relevant to the second prong of the qualified immunity analysis. Even assuming Dr. Del Fabbro released the medical hold, not because MT's condition improved but because her stay was no longer paid for,[1] the ultimate analysis on qualified immunity is the objective view of a reasonable medical official with the facts known to Dr. Del Fabbro on April 29, 2010, when she placed the medical hold.

With respect to those known facts, the Court found significant Dr. Kaven's statements in her psychological evaluation that MT was more likely than most people her age to demonstrate generally adaptive interpersonal behavior most of the time and had sufficient psychological resources to cope adequately with the demands life imposed on her. *See* Mem. Op. and Order 20, 23, ECF No. 106; Aff. of Samuel Roll, Ph.D ¶¶ 8(B), ECF No. 102-9. Dr. Roll opined that these statements, and the psychological test data taken as a whole, were inconsistent with a need for forced hospitalization. *See* Aff. of Samuel Roll, Ph.D ¶ 8(D), ECF No. 102-9. Although Dr. Del Fabbro did not rely on the psychological evaluation when placing the hold, the facts construed in favor of Plaintiffs suggest she was aware of the contents of the evaluation. The Court stands by

---

[1] Defendant disputes that she personally knew about the lack of insurance and that insurance played any role in the decision to place or release the medical hold.

its previous determination that Dr. Kaven's statements and Dr. Roll's opinions create a question of fact as to the need for the medical hold and whether Dr. Del Fabbro erred. After reconsidering Dr. Roll's opinion, however, the Court finds it does not create factual questions going to the "clearly established law" portion of the analysis. Dr. Roll does not opine that, when considering all the facts Dr. Del Fabbro had before her, no reasonable official would agree there was an immediate threat to the safety of MT.

This Court relied in its initial opinion extensively on the Tenth Circuit's decision remanding this case for reconsideration. The Tenth Circuit, however, made clear that on a Rule 12(b)(6) motion, Defendants were subject to a more challenging standard of review than would apply on summary judgment. *Thomas*, 765 F.3d at 1194. It also noted that the complaint did not contain facts showing MT's suicide risk on April 29, 2010. *Id.* at 1197. On summary judgment, it is undisputed that Dr. Del Fabbro knew that MT stated on April 28, 2010 that if she were to go home, her suicidal ideation would be 8 out of 10 for the likelihood of hurting herself and 5 or 6 for wanting to kill herself. *See* Mem. Op. and Order 7, ECF No. 106.

After reconsidering the summary judgment record and existing precedent, the Court concludes that this undisputed fact makes this case a unique one, subject to the qualified immunity defense. *Cf. White*, 137 S.Ct. at 552 (stating that important indication that defendant did not violate clearly established right is where case presents a unique set of facts and circumstances). Plaintiffs did not provide, and the Court did not find, a case similar to the one here, as *White v. Pauly* instructs is necessary to overcome the defense. *See id.* Instead, in initially finding the law clearly established, this Court relied on the cases of *Suasnavas v. Stover*, 196 F. App'x 647 (10th Cir. Aug. 25, 2006), and *Roska ex rel. Roska v. Peterson*, 328 F.3d 1230 (10th

Cir. 2003), neither of which involved placing a medical hold on a patient threatening suicide. *See* Mem. Op. and Order 24, ECF No. 106.

The case of *Suasnavas* involved an allegation that child welfare social workers violated plaintiffs' rights to familial association in connection with a series of state-court child welfare proceedings in which, among other things, defendants allegedly (i) falsely accused Arnold Luethje, the plaintiff's step-father, of sexually molesting the plaintiff mother when she was a child, (ii) then removed plaintiff's child from her custody based on the false assertion that she endangered her child by leaving her in Mr. Luethje's home, and (iii) threatened plaintiff that her daughter would never be returned to her if she continued to associate with the Luethjes. *See Suasnavas*, 196 F. App'x at 650. The Tenth Circuit concluded, after reviewing the allegations of the complaint, that defendants were not entitled to a Rule 12(b)(6) dismissal based on their qualified immunity defense because the plaintiff mother alleged that defendants constructively terminated her clearly established parental rights without a hearing or proper justification and that defendants acted with the intent to interfere with her relationship with her daughter. *See id.* at 656-57.

In *Roska*, school employees reported to Utah's Division of Child and Family Services that they were concerned about a student's health, providing information on numerous instances in which the student's mother reported that her son had various, serious medical disorders, including one suffered by only 10 or 100 people in the world. *Roska*, 328 F.3d at 1237-38. A case worker suspected the mother suffered from Munchausen Syndrome by Proxy, a disorder in which a mother inflicts harm upon her children to gain sympathy and attention of medical personnel, and a decision was made to remove the child from the home. *Id.* at 1238. The case worker later admitted, however, that the boy was not in imminent danger of death. *Id.* The Tenth

7

Circuit concluded that plaintiffs pled sufficient facts to demonstrate that emergency circumstances did not exist to justify the boy's immediate removal from the home without notice or a hearing, based on the mere possibility of danger, and denied qualified immunity to defendants. *See id.* at 1245-46, 50.

To support their position that Dr. Del Fabbro had fair warning that her actions violated their constitutional rights, Plaintiffs also relied on the following familial association cases: *Santosky v. Kramer*, 455 U.S. 745, 768-70 (1982) (holding that "fair preponderance of the evidence" standard in parental rights termination proceedings violated due process); *PJ ex rel. Jensen v. Wagner*, 603 F.3d 1182, 1198-99 (10th Cir. 2010) (supporting general proposition of law that forced separation of parent from child is serious impingement, but determining there was no constitutional violation where state had an interest in safeguarding child's life, all medical evidence pointed to serious medical condition requiring chemotherapy, and child was never physically removed from custody to obtain that treatment); *Lowery v. County of Riley*, 522 F.3d 1086, 1090-92 (10th Cir. 2008) (holding that defendants were entitled to qualified immunity on claim that plaintiff's wrongful arrest, conviction, and incarceration interfered with his right to familial association with his daughter because there was no evidence that any defendants directed their conduct at familial relationship); *J.B. v. Washington County*, 127 F.3d 919, 927-28 (10th Cir. 1997) (concluding that county officials' physical removal of child from her home for period of almost 18 hours to investigate report of child sexual abuse did not impermissibly interfere with plaintiffs' right of familial association); *Griffin v. Strong*, 983 F.2d 1544, 1548-49 (10th Cir. 1993) (holding that officer did not violate plaintiff's familial associational rights with her husband by lying to her that her husband confessed to child abuse); and *Trujillo v. Board of County Comm'rs*, 768 F.2d 1186, 1187, 1189-90 (10th Cir. 1985) (recognizing right to familial

association, but affirming dismissal of claim based on wrongful death of plaintiffs' son and brother while incarcerated in jail for failure to allege intent to interfere with the particular relationship).

None of the cited cases have similar enough circumstances to place every reasonable medical doctor on notice that placing a medical hold on a minor who threatened suicide should she be released the next day would amount to an unlawful intrusion of the right to familial association when conflicting medical evidence existed that indicated the threat might be hollow. *Cf. Stonecipher v. Valles*, 759 F.3d 1134, 1144-45 (10th Cir. 2014) (granting officer qualified immunity on unlawful search and entry claim because, although officer was perhaps negligent in investigation, officer had conflicting evidence, some of which supported officer's assessment of probable cause); *Gomes*, 451 F.3d at 1135-38 (after concluding factual issues existed as to whether defendants had reasonable suspicion to remove child from parent's custody, based on pediatrician's testimony that child's fracture was consistent with parent's assertion that child injured herself falling from bed and his report that he was comfortable allowing parent to take child home, Tenth Circuit granted social worker qualified immunity because reasonable official could have believed there was immediate threat to child's safety based on other evidence – significant head injury to the child, questionable explanation from parents, and delay in seeking treatment). The Court now concludes it relied on cases with too high a level of generality when denying qualified immunity. *Cf. White*, 137 S.Ct. at 552 (noting that Tenth Circuit failed to identify case where officer acting under similar circumstances as Officer White was held to have violated Fourth Amendment); *Garcia v. Escalante*, No. 15-2058, 2017 WL 443610, at *7-9 (10th Cir. Feb. 2, 2017) (unpublished opinion) (reversing district court's denial of qualified immunity to officer who arrested suspect for possession of hydrocodone without valid prescription who

9

presented 13-14 month old prescription, because none of the cases relied on by district court involved arrest of suspect for possession of controlled substances, much less a suspect who contemporaneously presented arresting officers with prescription for drug at issue); *Aldaba*, 844 F.3d at 879 (holding that no cases presented a sufficiently similar situation to say that every reasonable officer would know Fourth Amendment condemned using Taser to avoid full-out confrontation with patient whose life depended on immediate treatment); *Kirkpatrick v. County of Washoe*, 843 F.3d 784, 793 (9th Cir. 2016) (granting social workers qualified immunity where they removed child from parent's custody without warrant because "none of the cases from this court explain when removing an infant from a parent's custody at a hospital to prevent neglect, without a warrant, crosses the line of reasonableness and violates the Fourth Amendment").

## IV. CONCLUSION

Plaintiffs' evidence creates factual questions as to whether Defendant intended to deprive Plaintiffs of their protected relationship with MT and whether the state's interest was sufficiently strong to justify an intrusion into their relationship. However, other undisputed evidence in the record – specifically, MT's suicidal threats – could support a reasonable official's conclusion that there was an immediate danger to MT. Most significantly, Plaintiffs failed to identify a case where a medical official acting under similar circumstances was held to have violated the Constitution.

Physicians faced with a child threatening suicide if released are placed in a difficult situation in which the failure to act to prevent their patients' discharge may have unthinkable consequences, and therefore, courts afford physicians with some discretion when they seek to protect a child whose safety may be at risk. *Cf. Gomes*, 451 F.3d at 1130 (explaining that social

workers should be afforded some discretion when they seek to protect a child from harm by removing the child from the home because of the "unthinkable consequence[s]" of failing to act). Granting qualified immunity supports the policies underlying the doctrine of protecting the public from unwarranted timidity by public officials and reducing the chance that lawsuits will distract from the performance of public duties. *See id.* at 1138. For all the foregoing reasons, the Court erred in not granting Dr. Del Fabbro qualified immunity on the "clearly established law" prong of the analysis.

**IT IS THEREFORE ORDERED** that

1. Defendant Dr. Anilla Del Fabbro's Rule 59(e) Motion to Amend Judgment (**ECF No. 107**) is **GRANTED**.

2. Defendant Del Fabbro is entitled to qualified immunity and will be **DISMISSED WITH PREJUDICE** from the case.

_____
**UNITED STATES DISTRICT JUDGE**